UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRIDGET FOSTER, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| vs. | ) Case No. 4:12CV552 JCH |
| | ) |
| DEUTSCHE BANK NATIONAL TRUST | ) |
| CO., et al., | ) |
| | ) |
| Defendant(s). | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Deutsche Bank National Trust Company ("Deutsche Bank"), Residential Credit Solutions, Inc. ("RCS"), and Centre Trustee Corp.'s (collectively "Defendants") Motion to Dismiss Plaintiff Bridget Foster's First Amended Complaint, filed July 13, 2012. (ECF No. 31). The matter is fully briefed and ready for disposition.

**BACKGROUND**[1]

At the center of this dispute is Plaintiff's residence at 4353 Oregon Avenue in St. Louis, Missouri. Defendant RCS is in the business of mortgage financing and refinancing, and is incorporated in Delaware. (First Amended Complaint ("Complaint" or "Compl."), ¶ 2). RCS alleges itself to be attorney-in-fact for Defendant Deutsche Bank, which Plaintiff alleges is not licensed to conduct business in Missouri. (Id., ¶¶ 3-4). On or about February 3, 2012, Defendant Centre Trustee Corp.[2] notified Plaintiff that it had scheduled a foreclosure sale of her residence for February 24,

---

[1] The Court's background section is taken from Plaintiff's First Amended Complaint, to which Defendants have not yet filed an answer.

[2] Centre Trustee Corp. is a St. Louis company doing business at 600 Washington Avenue. (Compl., ¶ 8).

2012, on behalf of RCS, acting as Servicing Agent for Deutsche Bank. (Id., ¶ 12). Plaintiff halted the foreclosure proceedings by filing a Chapter 13 petition on February 22, 2012. (Id.). The Bankruptcy Court dismissed the petition on March 26, 2012, however, in favor of the action presently before this Court. (Id.). Plaintiff's main contentions of wrongdoing arise from interactions and occurrences prior to the foreclosure proceedings.

In March, 2010, Plaintiff applied for loan modification consideration from RCS through the Home Affordable Modification Program ("HAMP"), in an attempt to reduce her monthly home mortgage payments.[3] (Compl., ¶¶ 13, 15(a)). HAMP requires a trial period of three months, and Plaintiff commenced this period in June, 2010. (Id., ¶ 15(b)). Plaintiff contends that although she successfully completed the trial period, meaning she made three timely monthly mortgage payments, RCS and its employees misplaced or misappropriated her August payment, causing several alleged injuries including a lowered credit score, continuous collection phone calls, and a delay in the modification process. (Id., ¶¶ 14, 15(c)-(l), 18).

Plaintiff timely made her September, 2010, payment of $1,025, and further made increased mortgage payments of $1,053 in November, and December, 2010.[4] (Compl., ¶ 15(p), (w)). In January, 2011, an employee of RCS notified Plaintiff that her modification was "all packaged." (Id., ¶ 15(y)). Although the payment was now $1,044, greater than before the modification and greater than RCS had promised when "selling" Plaintiff the HAMP modification loan, Plaintiff signed the modification documents electronically on January 31, 2011. (Id.).

Plaintiff made timely mortgage payments of $1,044 in January, and February, 2011. (Compl.,

---

[3] Plaintiff's mortgage payments prior to the HAMP application were $1,025 per month. (Compl., ¶ 14).

[4] It is unclear from the Complaint whether Plaintiff made a mortgage payment in October, 2010.

- 2 -

¶ 15(z)). In March, 2011, RCS increased the payment on the first purported HAMP modification, to $1,200. (Id., ¶ 16(a)). After Plaintiff made her March payment, RCS contacted her in March, 2011, in order to "redo" the loan modification. (Id., ¶ 16(b), (c)). After being assured her recent unemployment would not affect the process, Plaintiff agreed to attempt the second modification, and subsequently faxed and emailed the necessary documentation to RCS. (Id., ¶ 16(d)-(i)). Despite this cooperation, RCS twice notified Plaintiff that her loan modification had been declined, first due to insufficient income, and later because RCS was not permitted to make a second modification in one twelve month period. (Id., ¶ 16(j)-(l)).

Plaintiff contends that various statements made by RCS employees encouraging her to withhold mortgage payments during the loan modification process caused the eventual payment complications, resulting in the aforementioned notification of foreclosure in February, 2012. (Compl., ¶¶ 15-17, 20). Based on the foregoing events Plaintiff alleges, among other claims, violations of Missouri's Unlawful Merchandising Practices Act, Deceptive Business Practices Act, and Bait Advertising Act, as well as fraud, fraudulent concealment, civil conspiracy to commit fraud, and violations of the federal Truth in Lending Act.

As stated above, Defendants filed the instant Motion to Dismiss on July 13, 2012, claiming Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure compel dismissal of the entirety of Plaintiff's Complaint. (ECF No. 31).

## **LEGAL STANDARDS**

Rule 12 of the Federal Rules of Civil Procedure outlines the various enumerated defenses that a party may assert by motion. Fed. R. Civ. P. 12(b). Pertinent to this case, Rule 12(b)(1) allows for dismissal of a complaint based on "lack of subject-matter jurisdiction," and Rule 12(b)(6) provides the basis for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P.

12(b)(1), (6).

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (citations omitted). In assessing a facial challenge to jurisdiction, "all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." Id. (citation omitted).

In ruling on a motion dismiss under Rule 12(b)(6), the Court must view the allegations in the complaint in the light most favorable to Plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008). The Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). The Complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," however, and the motion to dismiss must be granted if the Complaint does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 555 (pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

## DISCUSSION

At the outset, this Court must determine whether it has subject matter jurisdiction to consider

Plaintiff's claims. See Greater St. Louis Const. Laborers Welfare Fund v. Sunrise Const., Inc., No. 4:05-CV-481 CAS, 2008 WL 4951586, at *1 (E.D. Mo. Nov. 18, 2008) (quoting Carlson v. Arrowhead Concrete Works, Inc., 445 F.3d 1046, 1050 (8th Cir. 2006)) ("'In every federal case the court must be satisfied that it has jurisdiction before it turns to the merits of other legal arguments."). Federal courts are courts of limited jurisdiction; they possess only that power authorized by Constitution and statute. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). Thus, "[f]ederal district courts have subject matter jurisdiction over cases that meet the standards for diversity jurisdiction and cases that raise federal questions." Perez v. Forest Laboratories, Inc., Civ. No. 12-1064 (ERW), 2012 WL 4811123, at *1 (E.D. Mo. October 10, 2012) (citing Peters v. Union Pac. R.R. Co., 80 F.3d 257, 260 (8th Cir. 1996)). See also Williams v. City of Marston, 857 F.Supp.2d 852, 861 (E.D. Mo. 2012) (citation omitted) ("Generally, this court only has jurisdiction to adjudicate claims based on either federal subject matter jurisdiction or diversity jurisdiction.").

**I.     Original Jurisdiction**

    **A.     Federal Question Jurisdiction Under HAMP**

Under federal question jurisdiction, it is proper for district courts to hear "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Indeed, the federal district courts cannot hear cases concerning only state law issues unless there is some other species of jurisdiction present.

In her Complaint, Plaintiff alleges several causes of action that appear to arise under HAMP, a federal endeavor. For example, in Count IX Plaintiff asks that the Court direct Defendants to grant her a modified mortgage, pursuant to her first mortgage modification application and in accordance with the provisions of HAMP, and in Count X she requests the same relief with respect to her second application. (See Compl., ¶¶ 86-106). In their Motion to Dismiss, however, Defendants assert that

as a mere incidental beneficiary of Defendants' HAMP Servicer Participation Agreement, Plaintiff lacks standing to pursue these causes of action. (See Defendants' Suggestions in Support of their Motion to Dismiss, PP. 3-4).

HAMP is one of several economic assistance programs created in response to the 2008 financial crisis. See Brisbin v. Aurora Loan Servs., Civ. No. 10-2130 (RHK/JJK), 2011 WL 1641979, at *5 (D. Minn. May 2, 2011) (quoting Zoher v. Chase Home Financing, No. 10-14135-CV, 2010 WL 4064798, at *2 (S.D. Fla. Oct. 15, 2010)). As part of the Emergency Economic Stabilization Act of 2008 ("EESA"), HAMP was formulated by the Department of Treasury and other government institutions as a way to provide financial incentives to participating mortgage servicers to modify terms of existing eligible loans. See id. Importantly, however, "[a] majority of courts have held that EESA, and by extension . . . HAMP, do[es] not provide a private right of action for borrowers." Ming'ate v. Bank of Am., Civil No. 11-1787 ADM/TNL, 2011 WL 4590431, at *3 (D. Minn. Sept. 30, 2011) (citation omitted). Courts in this district and other districts in the Eighth Circuit fall within that majority rejecting the existence of a private right of action under HAMP. See, e.g., Maxwell v. Aurora Loan Servs., No. 4:11-CV-1264 CAS, 2011 WL 4014327, at *2 (E.D. Mo. Sept. 9, 2011) (citation omitted) ("In fact, courts have recognized that HAMP does not create a private right of action for borrowers against servicers and lenders."); Brisbin, 2011 WL 1641979, at *5 (noting both parties agreed that "the EESA created no private right of action against loan servicers that fail to comply with HAMP guidelines"); Bohnhoff v. Wells Fargo Bank, 853 F. Supp. 2d 849, 853 (D. Minn. 2012) (citation omitted) ("As this court has previously noted, there is no private right of action under HAMP."). Thus, to the extent Plaintiff's Complaint purports to lodge claims directly asserting HAMP violations, or demanding enforcement of HAMP guidelines, such claims are dismissed with prejudice, and cannot provide the basis for this Court's jurisdiction.

In an apparent concession to the foregoing, in her response Plaintiff asserts her claims, "do not come under HAMP as such," and "are wholly independent of HAMP."[5] (Plaintiff's Suggestions in Opposition to Defendants' Rule 12 Motion to Dismiss ("Plaintiff's Opp."), P. 3). In other words, Plaintiff maintains she is suing not in an attempt to compel Defendants to grant her HAMP modification application in the first instance, but rather in an attempt to compel fulfillment of the terms of their already consummated contract.[6] (Id., P. 4). Plaintiff concludes her response by stating she has established this Court's right to exercise jurisdiction not pursuant to a federal question, i.e., HAMP, but rather pursuant to diversity jurisdiction under 28 U.S.C. § 1332.[7] (Id., PP. 5-6). The Court thus turns to a consideration of whether Plaintiff successfully establishes this Court may exercise diversity jurisdiction over this matter.

B.  **Diversity Jurisdiction**

As relevant here, 28 U.S.C. § 1332 states that, "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where

---

[5] Plaintiff makes this claim despite the assertion in her jurisdictional statement that this action is brought pursuant to HAMP. (See Compl., ¶ 25).

[6] As noted above, Plaintiff contends the initial loan modification process was completed in January, 2011, and thus represents a consummated contract between the parties. Plaintiff further requests that to the extent the Court finds she has not sufficiently pled a breach of this contract as a claim in her Complaint, she be granted leave to amend to include such a cause of action. (Plaintiff's Opp., PP. 12-13). Such an amendment would be futile, however, as the addition of a breach of contract claim would provide a basis for this Court to exercise neither federal question nor diversity jurisdiction. See Longie v. Spirit Lake Tribe, 400 F.3d 586, 589 n. 3 (8th Cir.), cert. denied, 546 U.S. 885 (2005) (upholding the district court's denial of motion for leave to amend when the amendment would have been futile, as it provided no basis for subject matter jurisdiction).

[7] It is noteworthy that this represents a shift in position for Plaintiff; in other words, Plaintiff did not posit diversity as a jurisdictional basis in her Complaint. (See Compl., ¶ 25).

any plaintiff holds citizenship." Perez, 2012 WL 4811123, at *1 (citing OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 346 (8th Cir. 2007)). Furthermore, as several are named as Defendants in this case, it is important to note that a corporate entity is deemed to be a citizen of each state in which it was incorporated, and the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1).

Upon review the Court finds diversity jurisdiction is not present on the face of the Complaint, because both Plaintiff and the third named Defendant, Centre Trustee Corp., are citizens of Missouri. (See Compl., ¶¶ 1, 8). Plaintiff thus fails to invoke federal diversity jurisdiction under 28 U.S.C. § 1332.

### C. Truth in Lending Act

The Court finally considers whether Plaintiff successfully invokes federal question jurisdiction with her cause of action based on alleged violations of the Truth in Lending Act ("TILA"). (Compl. ¶ 107-117). TILA imposes numerous conditions and requirements on entities in the business of lending. 15 U.S.C. § 1640. The law provides for damages and other remedies for plaintiffs who succeed in proving that a creditor has failed to comply with the various requirements set forth therein. 15 U.S.C. § 1640(a). The statute and its duly enacted regulatory scheme serve as a safeguard against predatory lending. See generally 12 C.F.R. § 226.1.

Fatal to Plaintiff's claim under TILA, however, is the statute of limitations governing alleged violations. The statute states that an "action under this section may be brought in any United States district court . . . within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).[8] According to the Complaint, the alleged violations occurred on "the date of the application

---

[8] Plaintiff incorrectly states in her Complaint that the limitation period on her claim under TILA is three years. (Compl., ¶ 110). The statutory reference to a three-year statute of limitations applies only to actions "to enforce a violation of section 1639," which must be brought

- 8 -

for the FHA-HAMP modified mortgage loan application in May 2010." (Compl., ¶ 110). Plaintiff's original Complaint was filed with this Court on March 25, 2012[9]; thus, a period of more than one year has passed, and the statute of limitations provided in TILA invalidates the cause of action.[10] Plaintiff's claim of TILA violations therefore must be dismissed under Rule 12(b)(6), and cannot provide a basis for this Court's jurisdiction.

## II.     Supplemental Jurisdiction

After setting aside the causes of action arising under federal law, the remainder of Plaintiff's Complaint alleges violations of Missouri State law, and common law. In any civil action of which they have original jurisdiction, district courts have supplemental jurisdiction, "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Once a court has dismissed all claims over which it has original jurisdiction, however, in its discretion it may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3).

The Eighth Circuit has held that district courts have "broad discretion" in deciding whether to exercise supplemental jurisdiction over state law claims. Green v. Ameritrade, Inc., 279 F.3d 590, 599 (8th Cir. 2002); see also Willman v. Heartland Hosp. East, 34 F.3d 605, 613 (8th Cir. 1994), cert. denied, 514 U.S. 1018 (1995). Upon consideration, this Court will now exercise its discretion under 28 U.S.C. § 1367(c)(3), and dismiss the remainder of the claims in Plaintiff's Complaint

---

"by the appropriate State attorney general in any appropriate United States district court." 15 U.S.C. § 1640(e).

[9] Plaintiff did not include a count for alleged TILA violations in her original Complaint. (ECF No. 1). The Court need not consider whether the count, included in Plaintiff's First Amended Complaint, relates back to the original Complaint, as it is untimely in any event.

[10] Even assuming the asserted violations occurred at the closing of the modified mortgage loan, Plaintiff's claim is still untimely, as that closing occurred in January, 2011. (Compl., ¶ 112).

without prejudice.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 31) is **GRANTED**, and Plaintiff's federal law claims against Defendants are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's state law claims against Defendants are **DISMISSED** without prejudice.

An appropriate Judgment will accompany this Memorandum and Order.

Dated this   25th   day of October, 2012.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE